IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONOVAN HENRY, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | No. 3:20-cv-01114-C (BT) |
| | § | |
| WILLIAM BARR, et al., | § | |
|     Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Donovan Henry,[1] through his counsel, has filed (i) an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 8) challenging his detention by U.S. Immigration and Customs Enforcement (ICE), and (ii) a motion for a preliminary injunction (ECF No. 18) ordering his immediate release from ICE custody. Both matters are fully briefed, and the Court held a hearing on Henry's motion for a preliminary injunction on October 26, 2020. Now, for the following reasons, the Court recommends that both Henry's habeas petition and his preliminary injunction motion be denied.

I.

Henry is a 61-year-old citizen of Jamaica. He first entered the United States in 1978, but he was ordered deported and removed from the United States in 1987.

---

[1] In her notice of appearance, counsel confirms that "Henry is the petitioner's last name." (ECF No. 5).

1

He returned to the United States later that same year and has remained continuously in the United States since 1987.

In 2015, Henry was convicted by an Arizona state court of attempted drug trafficking and money laundering. In 2018, he was convicted in federal district court in Arizona of illegal reentry of a removed alien. A reinstatement of removal order was issued for Henry, and he has been in ICE custody since March 2019.

Henry applied for withholding of removal and protection under the Convention Against Torture because is homosexual. But an immigration judge denied his applications for protection. Henry was ordered removed from the United States in August 2019. He did not appeal.

Henry's removal has been delayed by several factors. First, he suffers from serious medical conditions, including diabetes, high blood pressure, high cholesterol, and he is HIV-positive. These medical conditions require continuity of care and coordination with the Jamaican Ministry of Health. Additionally, due to the COVID-19 pandemic, Jamaica suspended removals in March 2020 and thereafter reduced the number of removals to only 40 per month.

On April 22, 2020, Henry and five other ICE detainees at the Prairieland Detention Center initiated this civil action by filing a joint *pro se* § 2241 petition challenging their detention as unreasonable and seeking immediate release from custody due to their concerns about exposure to the COVID-19 virus while in detention. Because "[t]here is not authority for permitting multiple petitioners to file one single petition for habeas corpus relief" and because "[a]llowing multiple

petitioners to proceed on a single petition . . . presents a multitude of difficulties," Order (ECF No. 1), the Court severed Henry's petition into a separate action. Thereafter, Henry obtained counsel, paid the filing fee, and filed an amended petition.

In his amended petition, Henry argues that his continued detention is unreasonable under the Due Process Clause of the Fifth Amendment. He claims there is "no end in sight" to his detention because his deportation is not reasonably foreseeable. Specifically, he argues the Government cannot remove him to Jamaica because he is an HIV-positive, homosexual man. Henry also argues that his detention is unreasonable due to the COVID-19 pandemic which threatens his health. Henry claims that he is especially vulnerable to COVID-19 and deleterious consequences from infection given his age and multiple medical conditions.

On October 2, 2019, the Jamaican consulate issued a travel document for Henry's removal on October 29, 2020. In anticipation of his removal, Henry was transferred from the Prairieland Detention Center to the Bluebonnet Detention Center, where he contracted COVID-19. Henry was admitted to the Abilene Regional Medical Center on October 19, 2020.

On October 20, 2020, Henry's counsel filed a motion for a preliminary injunction seeking the same relief Henry seeks in his habeas petition: release from ICE custody. Henry argues that he is entitled to a preliminary injunction to prevent his prolonged detention, and if his motion is not granted, he is certain to suffer irreparable harm to his constitutional rights and physical and mental health.

3

Henry claims that he is substantially likely to succeed on the merits of his claim because the Government cannot continue to detain individuals when their removal is not reasonably foreseeable. Henry further claims that no public interest is served by the Government detaining an elderly, diabetic, HIV-positive man who has been infected with COVID-19 during his detention.

The Court held a hearing on Henry's motion on October 26, 2020. Henry's counsel reported that Henry has not yet recovered from COVID-19, and he is receiving supplemental oxygen. His HIV medications have been temporarily suspended. Counsel for the Government also admitted that Henry will not be removed on October 29, 2020, but that the Government expects to obtain a substitute travel document for Henry's removal in November 2020.

## II.

Henry has been in federal custody for more than six months since his removal order became final in August 2019. He brings this action challenging his prolonged detention as a violation of his due process rights.

Under 8 U.S.C. § 1231(a)(1)(A), the Government has a 90-day period within which to remove aliens who have been ordered removed. The statute provides that, during that time, aliens ordered removed are to be detained. *Id.* § 1231(a)(2). Under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), an alien may file a § 2241 petition if, after six months from the date the removal order became final, he is still detained. *Id.* at 701. When an alien is removable under 8 U.S.C. § 1227(a)(2), he may be detained beyond the 90-day period of

removal for the time necessary to execute the removal. 8 U.S.C. § 1231(a)(6) (recognizing that aliens who have been convicted of an aggravated felony "may be detained beyond the removal period"); *see also Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) "read in light of the Constitution's demands, limits an alien's post-removal-detention period to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Notably, it "does not permit indefinite detention." *Id*. Moreover, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court in *Zadvydas* found that six months constituted a presumptively reasonable period of time for post-order detention. *Id*. at 701. However, that "does not mean that every alien not removed must be released after six months." *Id*.

Under *Zadvydas*, the alien bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also Khan v. Fasano*, 194 F. Supp.2d 1134, 1136 (S.D. Cal. 2001) ("*The burden is on the alien to show that there is no reasonable likelihood of repatriation*.") (emphasis in original). Next, the alien must come forward with a good reason to believe that there is no significant likelihood of removal in the reasonably near future. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002); *see also Francis S.M. v. Decker*, 2020 WL 1956053, at *4-*5 (D.N.J. Apr. 23, 2020) (denying a *Zadvydas* claim and noting that although air travel to the petitioner's home country was temporarily suspended

due to the COVID-19 pandemic, ICE intended to put the petitioner "on the earliest flights available"). A "lack of visible progress" in the removal process "does not in and of itself meet [a petitioner's] burden of showing that there is no significant likelihood of removal." *Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1367 (N.D. Ga. 2002). Conclusory allegations fail to meet an alien's burden of proof. *Gonzalez v. Bureau of Immig. & Customs Enforcement*, 2004 WL 839654, at *2 (N.D. Tex. Apr. 20, 2004).

Here, Henry argues that it is not likely that he will be removed to Jamaica in the reasonably foreseeable future for two reasons: (1) he is HIV-positive, and (2) he is homosexual. Henry claims that in August 2019, an ICE officer informed him that the Jamaican Government had refused to issue travel documents after it obtained his medical records and learned he is HIV-positive. He further claims that there is systemic discrimination in Jamaica against both homosexual men and HIV-positive people, and for this reason, he applied for withholding of removal and protection under the Convention Against Torture. Henry argues that although the Government represented that it expected to secure travel documents within days after its September 15, 2020 filing in this Court, ICE did not obtain travel documents from Jamaica for several months. Citing *Zadvydas*, 533 U.S. at 701, he argues that because he has met his initial burden of proof, the burden shifts to the Government.

The Government concedes that Henry has been detained beyond the six-month period set forth as presumptively reasonable in *Zadvydas*. (ECF No. 15 at

6

35.) *See Saeku v. Johnson*, 2017 WL 4075058, at *3 (N.D. Tex. Sept. 14, 2017) (after an alien establishes post-removal order exceeding six months, he "must provide good reason to believe that there is no significant likelihood of removal in the foreseeable future.") (citing *Apau v. Ashcroft*, 2003 WL 21801154, at *2 (N.D. Tex. June 17, 2003)). However, the Government argues that he has failed to demonstrate a prima facie claim under *Zadvydas*. (ECF No. 15 at 35.) The evidence before this Court, as discussed at the hearing, demonstrates that ICE has successfully obtained a valid travel document for Henry from the Jamaican Government. (ECF No. 23 at 8.) Specifically, Henry was scheduled to be removed to Jamaica on October 29, 2020.

At the hearing, Henry's counsel represented that Henry cannot be removed on October 29, 2020 because he is still suffering from COVID-19 symptoms and is receiving supplemental oxygen. To the extent Henry's current symptoms from his COVID-19 infection prevent him from being removed as scheduled on October 29, 2020, it will not be held against the Government. The Government has shown that it has secured travel documents for his removal to Jamaica. And, to the extent that Henry is unable to make the October 29, 2020 flight, the Government represents that there is another removal flight scheduled to Jamaica on November 19, 2020. (ECF No. 23 at 4.)

Henry has failed to show that his situation presents specific circumstances or barriers that establish he likely cannot be removed to Jamaica in the reasonably foreseeable future. To the contrary, the Jamaican Government issued documents

7

for Henry to travel to Jamaica on October 29, 2020, which supports the conclusion that Henry does not have individualized barriers that stand in his way of returning to Jamaica. And the Government does not believe there will be any issues getting new travel documents if Henry is unable to travel on October 29, 2020 due to his COVID-19 infection. (ECF No. 23 at 4.) There is no evidence to suggest Henry will not soon recover enough to be cleared for travel on the November flight to Jamaica. If Henry misses the November flight, there will likely be a flight the next month. Henry thus has failed to meet his initial burden to show it is not likely he will be removed to Jamaica in the reasonably foreseeable future.

Even if he had met his initial burden, Henry did not come forward with a good reason to believe his removal will not take place in the reasonably near future. Rather, the totality of the evidence before the Court shows that Henry's sexuality and HIV-positive status are not barriers to his removal. Jamaica is willing to issue travel documents, and there are removal flights available every month. *See Patel v. Sessions*, 2019 WL 1119997, at *2 (W.D. La. Feb. 15, 2019), *rec. adopted*, 2019 WL 1120036 (W.D. La. Mar. 11, 2019) (the fact that travel documents were previously issued precludes the court from crediting the petitioner's conclusory allegation that his removal is not likely to occur in the foreseeable future).

Further, the efforts made by the Government to secure travel documents for Henry and comply with *Zadvydas* must be viewed through the lens of our present world. The world is grappling with a COVID-19 pandemic, which has impacted both national and international travel. Indeed, the pandemic has delayed

essentially everything. *See Shah v. Wolf*, 2020 WL 4456530, at *3 (N.D. Tex. July 13, 2020), *rec. adopted*, 2020 WL 4437484 (N.D. Tex. Aug. 3, 2020) (Cummings, J.) (denying *Zadvydas* claim despite delay caused by COVID-19; petitioner's arguments that pre-pandemic travel authorization was "obsolete" was supported only by speculation and conjecture and did not suffice to carry his burden); *see also Ramirez v. Searls*, 2020 WL 2748203, at *2 (W.D.N.Y. May 27, 2020) (denying *Zadvydas* claim despite the delay caused by COVID-19 because the Department of Homeland Security was in possession of a travel document and had also indicated that it was planning to remove the petitioner within a month).

Considering the foregoing, Henry has failed to come forward with evidence suggesting he will not be removed in the reasonably foreseeable future. Therefore, Henry fails to demonstrate any likelihood of success on his *Zadvydas* claim.

III.

Federal Rule of Civil Procedure 65(a) provides for the issuance of preliminary injunctions. Fed. R. Civ. P. 65(a). "A preliminary injunction is an 'extraordinary remedy.'" *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *see Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule."); *see also Rapides Par. Sch. Bd*, 118 F.3d 1047, 1050 (5th Cir. 1997). In fact, "[i]n some ways, the permanent injunction is

less demanding than the preliminary injunction." *Valentine v. Collier*, ___ F.3d ___, 2020 WL 6039993, at *2 (5th Cir. 2020).

For a movant to demonstrate entitlement to preliminary injunctive relief, he must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is denied, (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) the grant of an injunction will not disserve the public interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996).

"The party seeking [a preliminary injunction] must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *accord PCI Transp Inc. v. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). If a movant fails to meet his burden on any of the four elements, the court need not address the other elements. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (the court failed to address the remaining preliminary injunction elements after it found that he failed to show a substantial likelihood of success on the merits). "The decision whether to grant a preliminary injunction lies within the sound discretion of the trial court." *Texas

*Voters Alliance, et al., v. Dallas County, et al.*, ___ F. Supp.3d ___, 2020 WL 6146248, at *2 (E.D. Tex. Oct. 20, 2020).

Here, Henry argues that he is likely to prevail on his habeas claim because his prolonged detention violates the Due Process clause of the Fifth Amendment. Citing *Zadvydas*, 533 U.S. at 701, Henry argues that he has met his initial burden of proof and demonstrated a likelihood of success on the merits. However, as set forth above, the Court finds that Henry has failed to come forward with persuasive evidence suggesting he will not be removed to Jamaica in the reasonably foreseeable future, and he therefore fails to demonstrate any likelihood of success on his *Zadvydas* claim. The Government recently obtained travel documents to remove Henry to Jamaica. Thus, neither his HIV-positive status nor his homosexuality are preventing the Government from removing him to Jamaica. Even if Henry cannot use the travel documents for travel on October 29, 2020 because he is still recovering from COVID-19, the Government can likely obtain travel documents for November. Henry has not shown that there is no reasonable likelihood of repatriation or that likelihood of removal in the reasonably foreseeable future does not exist. To the contrary, there is a significant likelihood he will soon recover from COVID-19 and be removed in the reasonably near future.

The standard Henry must meet for a preliminary injunction, an extraordinary remedy, is higher than that required to demonstrate success on his petition. Because Henry's request for a preliminary injunction fails under the first element, the Court need not address the remaining elements. *See Roho*, 902 F.2d

at 361 (the court failed to address the remaining preliminary injunction elements after it found that he failed to show a substantial likelihood of success on the merits); *see also Umarbaev v. Moore*, 2020 WL 3051448, at *2 (N.D. Tex. June 6, 2020) (denying temporary restraining order because petitioners did not show the court that habeas relief was available on the habeas theories advanced).

## Conclusion

For the foregoing reasons, the Court recommends that Henry's petition and motion seeking a preliminary injunction be DENIED.

SIGNED October 30, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).